# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **Jaguar Land Rover Limited,** **a United Kingdom company,** | **Case No. 2:16-cv-13386-GAD-SDD** |
| *Plaintiff,* **v.** | **Hon. Gershwin A. Drain** |
| **Bombardier Recreational Products,** **a Canadian company,** | *JURY TRIAL REQUESTED* |
| *Defendant.* | |

## JAGUAR LAND ROVER'S TRIAL BRIEF



# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... ii

I.      INTRODUCTION ......................................................................................1

II.     ISSUES ......................................................................................................2

     A.      Trademark Infringement ...............................................................2

          1.      Legal standards and issues ................................................... 2

          2.      Key facts ................................................................................ 3

     B.      Willful infringement ......................................................................8

          1.      Legal standards and issues ................................................... 8

          2.      Key facts ................................................................................ 8

     C.      Profits and damages.......................................................................9

          1.      Legal standards and issues ................................................... 9

          2.      Key facts .............................................................................. 10

     D.      Abandonment ...............................................................................11

          1.      Legal standards and issues ................................................. 11

          2.      Key facts .............................................................................. 14

     E.      Fraud.............................................................................................15

          1.      Legal standards and issues ................................................. 15

          2.      Key facts .............................................................................. 17

     F.      Unclean hands ..............................................................................18



# TABLE OF AUTHORITIES

## Cases

*A&H Sportswear Co. v. Victoria's Secret Stores*,
   967 F.Supp 1457 (E.D. Penn. 1997)............................................................10

*Allard Enters. v. Advanced Programming Res., Inc.*,
   146 F.3d 350 (6th Cir. 1998) ....................................................................12

*Am. Ass'n for Justice v. Am. Trial Lawyers Ass'n*,
   698 F. Supp. 2d 1129 (D. Minn. 2010) ........................................................12

*Banjo Buddies, Inc. v. Renosky*,
   399 F.3d 168 (3d Cir.2005) .........................................................................8

*BIC Leisure Prods. v. Windsurfing Int'l, Inc.*,
   850 F.Supp. 224 (S.D.N.Y. 1994) .............................................................10

*Carson v. Here's Johnny Portable Toilets, Inc.*,
   698 F.2d 831 (6th Cir. 1983) .......................................................................3

*Champions Golf Club, Inc. v. Champions Golf Club*,
   78 F.3d 1111 (6th Cir. 1996) ................................................................ 4, 5, 7

*Coach v. Goodfellow*,
   717 F.3d 498 (6th Cir. 2013) .......................................................................8

*Crash Dummy Move, LLC v. Mattel, Inc.*,
   601 F.3d 1387 (Fed. Cir. 2010) .................................................................12

*Daddy's Junky Music v. Big Daddy's Family Music*,
   109 F.3d 275 (6th Cir. 1997) ............................................................... 5, 6, 7

*Emergency One, Inc. v. Am. FireEagle, Ltd.*,
   228 F.3d 531 (4th Cir. 2000) .....................................................................13

*FDIC v. Homestead Mortgage Co.*,
   2010 U.S. Dist. LEXIS 136392 (6th Cir. 2010) ..................................... 11, 13



*Ferrari S.p.A. Escercizio Fabbriche Automobilie Corse v. McBurnie,*
    1986 U.S. Dist. LEXIS 13442 (S.D. Cal. June 4, 1989) ...............................12

*Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.,*
    670 F.2d 642 (6th Cir. 1982) ................................................................ 2, 3, 4

*Hensley Mfg. Inc. v. ProPride, Inc.,*
    579 F.3d 603 (6th Cir. 2009) .........................................................................3

*Homeowners Group v. Home Marketing Specialists,*
    931 F.2d 1100 (6th Cir. 1991) .......................................................................3

*In re Bose,*
    580 F. 3d 1240 (Fed. Cir. 2009) ..................................................................15

*JFJ Toys, Inc. v. Sears Holdings Corp.,*
    237 F. Supp. 3d 311 (D. Md. 2017)................................................................4

*Laukus v. Rio Brands, Inc.,*
    391 Fed. App'x. 416 (6th Cir. 2010) ..............................................................9

*Lucky's Detroit, LLC v. Double L, Inc.,*
    2014 U.S. Dist. LEXIS 137588 (E.D. Mich. Sept. 30, 2014) ........................9

*Maker's Mark Distillery, Inc. v. Diageo N. Am.,*
    679 F.3d 410 (6th Cir. 2012) .........................................................................4

*Marshall Field & Co. v. Mrs. Fields Cookies,*
    1989 TTAB LEXIS 17 (TTAB March 7, 1989)...........................................16

*McLemore v. Regions Bank,*
    682 F.3d 414 (6th Cir. 2012) .......................................................................19

*Morehouse Mfg. Corp. v. J. Strickland & Co.,*
    407 F.2d 881 (CCPA 1969) .........................................................................15



*Nolan LLC v. TDC International Corp.*,
    2008 WL 11355576 (E.D. Mich. Mar. 31, 2008)..........................................11

*Ordos City Hawtai Autobody Co. v. Dimond Rigging Co., LLC.*,
    2015 U.S. Dist. LEXIS 190261 (E.D. Mich. 2015) ......................................18

*Performance Unlimited v. Questar Publishers*,
    52 F.3d 1373 (6th Cir. 1995) ........................................................................19

*SecuraComm Consulting Inc. v. Securacom Inc.*,
    166 F.3d 182 (3d Cir. 1999) ............................................................................8

*Stilson & Assoc., Inc. v. Stilson Consulting Group, LLC*,
    2005 WL 1059277 (6th Cir. May 6, 2005)...................................................11

*Whirlpool Properties, Inc. v. LG Electronics U.S.A., Inc.*,
    2005 WL 3088339 (W.D. Mich. Nov. 17, 2005) ..........................................19

*Wynn Oil Co. v. Thomas*,
    839 F.2d 1183 (6th Cir. 1988) ....................................................................3, 9

## Statutes

15 U.S.C. § 1055 ....................................................................................................11
15 U.S.C. § 1114 ......................................................................................................2
15 U.S.C. § 1117 ...................................................................................................8, 9
15 U.S.C. §1127 .............................................................................................. 11, 12

## Other Authorities

3 McCarthy on Trademarks §17.12 .......................................................................11
3 McCarthy on Trademarks §17.15 .......................................................................12
3 McCarthy on Trademarks §17.21 ................................................................. 12, 13
6 McCarthy on Trademarks §31.67 .......................................................................15



## I.   INTRODUCTION

LAND ROVER began in 1948 with a single, utilitarian vehicle that quickly gained a reputation as being in a class of its own for ruggedness and off-road adventures. Over the next forty years, the LAND ROVER vehicle gained a devoted following throughout the world, in part because the LAND ROVER could go where other vehicles could not. This original, iconic LAND ROVER vehicle was renamed DEFENDER around 1990.

JLR, through its predecessors, began selling the DEFENDER and related goods and services in the U.S. in 1992 and in 1993 registered the mark with the United States Patent and Trademark Office ("PTO") for "motor land vehicles; namely, station wagons." Almost immediately the vehicle was a hit with U.S. customers who appreciated its incomparable off-road abilities. The durability and versatility of the DEFENDER vehicle became the proverbial blueprint for all the Land Rover models that followed. In 1998, JLR ceased sales of the DEFENDER to general consumers in the U.S. due to changes in U.S. airbag laws. After 1998, JLR continued selling new DEFENDER vehicles (to the military and a theme park), JLR continued manufacturing DEFENDER parts, accessories, and merchandise items for sale in the U.S., and JLR franchisees continued selling and servicing pre-owned DEFENDER vehicles throughout the U.S. JLR additionally maintains approximately 179 DEFENDER registrations and applications in various classes



around the world (not including DEFENDER-formative registrations and applications). It is not hyperbolic to say that the DEFENDER is the heart and soul of the Land Rover brand.

In November 2015, over JLR's objection, BRP began selling an off-road, side-by-side vehicle called DEFENDER in an attempt to capitalize off the image and goodwill JLR has built in the DEFENDER name. In response, after a number of proceedings at the PTO, JLR filed this suit alleging: trademark infringement (Counts I and V), unfair competition (Counts II and III), and a declaratory judgment of no abandonment (Count VI).  JLR is also seeking damages in the amount of either: (1) disgorgement of BRP's profits or (2) a reasonable royalty. BRP has filed counterclaims requesting cancellation of JLR's registration based on abandonment and fraud.

## II.   ISSUES

### A.   Trademark Infringement

#### 1.   Legal standards and issues

Trademark infringement arises when there is a likelihood of confusion as to source, affiliation or sponsorship.[1]  15 U.S.C. § 1114.  Likelihood of confusion is assessed based on the well-known *Frisch's* factors that:

---

[1] The same likelihood of confusion analysis applies to JLR's federal and common law claims of trademark infringement (Counts I and V) and its claims of unfair competition and false designation of origin or sponsorship (Counts II and III). *Champions Golf Club, Inc. v. Champions Golf Club, Inc.*, 78 F.3d 1111, 1123



1.    strength of the plaintiff's mark;

2.    relatedness of the goods;

3.    similarity of the marks;

4.    evidence of actual confusion;

5.    marketing channels used;

6.    likely degree of purchaser care;

7.    defendant's intent in selecting the mark;

8.    likelihood of expansion of the product lines.

*Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982).

JLR need not prove all or even most of the *Frisch's* factors to establish infringement. *Wynn Oil Co. v. Thomas,* 839 F.2d 1183, 1186 (6th Cir. 1988). "The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Homeowners Group*, 931 F.2d at 1106-07. Here all the relevant factors point to a likelihood of just such confusion.

## 2.    Key facts

**<u>Strength of the Mark</u>:** "The strength of a mark is a determination of the mark's distinctiveness and degree of recognition in the marketplace." *Homeowners*

---

(6th Cir. 1996); *Hensley Mfg. Inc. v. ProPride, Inc.*, 579 F.3d 603, 609 n.5 (6th Cir. 2009); *Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 833 (6th Cir. 1983); *Homeowners Group v. Home Marketing Specialists*, 931 F.2d 1100, 1104-05 (6th Cir. 1991).



*Group*, 931 F.2d at 1107 (6th Cir. 1991). The stronger the mark, the greater the likelihood of confusion. *Id.*

JLR's DEFENDER mark is strong because, among other things, since 1992 JLR and/or its franchisees and licensees have continuously (1) sold and serviced new and pre-owned DEFENDER vehicles in the U.S., (2) manufactured and/or sold DEFENDER replacement parts, accessories,  and non-automotive items, and (3) marketed and advertised DEFENDER vehicles and related goods and accessories via print media, sponsored events, and product placement advertising in movies and television. Additionally, the enduring popularity of the DEFENDER vehicle in the U.S. is evident from third-party media consistently referring to it as "iconic," enthusiast groups, and the fact that pre-owned DEFENDER vehicles consistently command as much as $100,000 (more than double the original sales price). This factor weighs strongly in JLR's favor.

**<u>Similarity of the Marks</u>:** The similarity of the marks "is a factor entitled to considerable weight." *Champions Golf Club, Inc. v. Champions Golf Club*, 78 F.3d 1111, 1119 (6th Cir. 1996). Substantial similarity between the marks increases the likelihood of confusion. *Frisch's*, 670 F.2d at 648. Here, the marks are identical. The fact that BRP claims to use the DEFENDER mark in conjunction with its CAN-AM house mark does not diminish the likelihood of confusion. *See JFJ Toys, Inc. v. Sears Holdings Corp.*, 237 F. Supp. 3d 311, 336 (D. Md. 2017)("A confusing use does not become justified simply because a defendant tacks on a house mark to the infringing product."); *Maker's Mark Distillery, Inc. v. Diageo N. Am.*, 679 F.3d 410, 422 (6th Cir. 2012) (use of a house mark does not



significantly diminish the likelihood consumers will mistakenly believe the senior user is affiliated with or sponsors the junior user). This factor weighs strongly in JLR's favor.

**Relatedness of the Goods:** Goods or services are related if they are "marketed and consumed such that buyers are likely to believe that the [goods or] services, similarly marked, come from the same source, or are somehow connected with or sponsored by a common company." *Champions Golf Club*, 78 F.3d at 1118. JLR's and BRP's respective DEFENDER products are, at a minimum, closely related. Both are vehicles designed for off-road use in extremely difficult terrain. And, contrary to BRP's claims that the goods are "completely different" because the BRP DEFENDER is designed for off-road use, the evidence will show that numerous states allow consumers to drive BRP's vehicle on *public* roads. This factor weighs strongly in JLR's favor.

**Marketing Channels:** In weighing this factor, the trier of fact must consider "the similarities or differences between the predominant customers of the parties' respective goods or services" and "whether the marketing approaches employed by each party resemble each other." *Daddy's Junky Music v. Big Daddy's Family Music*, 109 F.3d 275, 285 (6th Cir. 1997). JLR has advertised its DEFENDER vehicle in publications and other media geared towards those seeking an off-road vehicle for work and/or play. BRP targets the same type of customer. Therefore, this factor weighs in JLR's favor because it is inevitable the parties' marketing will overlap.

**Degree of Purchaser Care:** "The effect of purchaser care, although



5

relevant, will be less significant than, or largely dependent upon, the similarity of the marks at issue." *Daddy's Junky Music*, 109 F.3d at 286. That is, the Sixth Circuit has held that even a high degree of purchaser care will only minimally impact the likelihood consumers will be confused regardless of whether the marks are dissimilar or quite similar, because the care a consumer may use in deciding *what* to buy will not necessarily extend to the decision about *whom* to buy it from. *Id.* Consequently, "confusingly similar marks may lead a purchaser who is extremely careful and knowledgeable about the [good] that he is buying to assume nonetheless that the seller is affiliated with or identical to the other party." *Id.* Thus, where, as here, the marks are identical and the goods are the same or closely related, the fact that both products are relatively expensive does not diminish the likelihood that even attentive consumers would be confused about whether JLR is somehow affiliated with, endorses, or sponsors BRP and/or the BRP DEFENDER vehicle. This factor weighs in JLR's favor or is neutral.

**Defendant's Intent:** "Direct evidence of intentional copying is not necessary to prove intent." *Daddy's Junky Music*, 109 F.3d at 286. "Rather, the use of a contested mark with knowledge of the protected mark at issue can support a finding of intentional copying." *Id.* Here, BRP admits that it knew about JLR's use of the DEFENDER mark when it chose to adopt the identical mark. JLR also expressly objected to BRP's planned use months *before* BRP went to market. Therefore, this factor weighs strongly in JLR's favor.

While the presence of intent can be strong evidence of a likelihood of confusion, the converse is not true. *Id.* "[T]he *lack* of intent by a defendant is



6

'largely irrelevant in determining if consumers are likely to be confused as to source.'" *Id.* (emphasis in original). Therefore, intent "is an issue whose resolution may benefit only the cause of a senior user, not … an alleged infringer." *Id.* So, even if jurors find BRP lacked intent, that finding "neither reduces nor increases the probability of consumer confusion." *Id.*

**Likelihood of Expansion:** "[A] 'strong possibility' that either party will expand [its] business to compete with the other or be marketed to the same consumers will weigh in favor of finding that the present use is infringing." *Daddy's Junky Music*, 109 F.3d at 287. But again, the converse is not true. *Id.* The Sixth Circuit has held that even if the parties are not likely to expand their markets significantly beyond their present positions that fact does not speak to whether the alleged infringer's use of the mark to market its goods is likely to cause consumer confusion. *Id.*; *Champions Golf Club*, 78 F.3d at 1122 ("an affirmative finding will provide a strong indication that the parties' simultaneous use of the marks is likely to lead to confusion, while a negative finding is *not* a strong indication to the contrary."). This factor weighs in JLR's favor to the extent BRP plans to add features to the BRP DEFENDER that will make them more similar to the JLR DEFENDER vehicles.

**Actual Confusion:** While JLR is not presently aware of any evidence of actual confusion, JLR does not have to prove actual confusion to prevail. *Daddy's Junky Music*, 109 F.3d at 284 ("[A] successful Lanham Act plaintiff only must show a sufficient *potential* of confusion, not actual confusion…."). In fact, "[d]ue to the difficulty of securing evidence of actual confusion, a lack of such evidence is



7

rarely significant." This factor is weighted heavily only when such evidence exists or particular circumstances indicate it should have been available. *Id.* This factor is neutral.

## B. Willful infringement

### 1. Legal standards and issues

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Sixth Circuit has held that a case is exceptional where the infringement is "malicious, willful, fraudulent, or deliberate." *Coach v. Goodfellow*, 717 F.3d 498, 505 (6th Cir. 2013) (citing *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1192 (6th Cir. 1997)).

JLR contends that this case is exceptional because BRP's infringement was at least "willful . . . or deliberate." *Coach*, 717 F.3d at 505. BRP was willful because it knew it was infringing JLR's DEFENDER trademark and/or acted with indifference to JLR's rights in the DEFENDER trademark. *See SecuraComm Consulting Inc. v. Securacom Inc.,* 166 F.3d 182, 187 (3d Cir. 1999), superseded by statute on other grounds as recognized by *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 171 (3d Cir.2005).

### 2. Key facts

BRP's infringement was "willful . . . or deliberate." BRP was admittedly aware of JLR's rights before it began selling vehicles in the United States. JLR sent BRP a cease and desist letter, and filed an opposition to BRP's trademark application, before BRP began selling its DEFENDER vehicles. Further, BRP knew of JLR's DEFENDER vehicles when it selected the DEFENDER name.



## C.     Profits and damages

### 1.     Legal standards and issues

Pursuant to 15 U.S.C. § 1117, if JLR prevails it may "recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." Here JLR seeks BRP's profits or damages in the form of reasonable royalty, and its costs.

Regarding profits, the statute states that JLR "shall be required to prove defendant's sales only; [BRP] must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117. To the extent BRP contends that some of its profits are attributable to factors other than its use of the DEFENDER trademark, BRP must prove any such apportionment. Indeed, the Sixth Circuit holds that "both common sense and the statute suggest that the burden of apportioning profits should be placed on the defendants." *Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 606 (6th Cir. 1991) (citing and quoting *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206-207 (1942)).

"The trial court's primary function is to make violations of the Lanham Act unprofitable to the infringing party." *Wynn Oil Co.*, 943 F.2d at 606-07 (quoting *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 941 (7th Cir. 1989)); *Lucky's Detroit, LLC v. Double L, Inc*., 2014 U.S. Dist. LEXIS 137588, *4 (E.D. Mich. Sept. 30, 2014). Thus, "[a]n award of profits may be warranted under various rationales, such as unjust enrichment, deterrence, and compensation." *Laukus v. Rio Brands, Inc*., 391 Fed. App'x. 416, 424 (6th Cir. 2010).



9

JLR seeks in the alternative a reasonable royalty, which is appropriate compensation for BRP's infringement. *A&H Sportswear Co. v. Victoria's Secret Stores*, 967 F.Supp 1457, 1479 (E.D. Penn. 1997). A royalty agreement between the same parties, on the same mark, for the same goods, provides powerful evidence of the values the parties placed on the mark and is highly relevant to the appropriate reasonable royalty in this case. *See BIC Leisure Prods. v. Windsurfing Int'l, Inc.*, 850 F.Supp. 224, 227 (S.D.N.Y. 1994) (relying on a Canadian license to determine the reasonable royalty and finding that defendant would have paid "an amount at least as large as the fee" it paid in Canada to become a licensee).

### 2.    Key facts

BRP has designated its financial information HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY, but stated in open court, during arguments on motions *in limine*, that BRP's profits on its DEFENDER vehicles are $150,000,000. BRP contends that none of its profits are attributable to its infringing use of the DEFENDER name, but has declined to switch the name of its vehicle to Traxter, the name BRP uses for the identical vehicle in Europe and Africa.

Concerning reasonable royalty, the parties agreed in their UK Consent Order that BRP would pay JLR a royalty of £300 per DEFENDER vehicle. That amounts to $459 in the U.S. per vehicle based on the conversion rate at the time. JLR seeks that same number as a royalty in this case. As JLR's expert testified, the agreed royalty also represents an economic floor for profits attributable to BRP's infringement.



**D.    Abandonment**

**1.    Legal standards and issues**

BRP contends that JLR abandoned the DEFENDER trademark.  To prove abandonment, BRP must prove, by clear and convincing evidence[2] that JLR's "use has been discontinued with intent not to resume such use."  15 U.S.C. § 1127; *Stilson & Assoc., Inc. v. Stilson Consulting Group, LLC*, No. 03-4458, 2005 WL 1059277, *2 (6th Cir. May 6, 2005) (stating movant has "a 'stringent," 'heavy,' or 'strict burden of proof.'"); *Nolan LLC v. TDC International Corp.*, No. 06-14907, 2008 WL 11355576, at *2 (E.D. Mich. Mar. 31, 2008) (applying clear and convincing evidence standard). "Use" here is broadly construed to include any bona fide use of a mark in the ordinary course of trade, and includes use by any JLR licensee because "a licensee's use inures to the benefit of the licensor-owner of the mark."  *FDIC*, 2010 U.S. Dist. LEXIS 136392, *32 (E.D. Mich. Dec. 27, 2010); *see also* 15 U.S.C. §§ 1055, 1127.

There is no minimum amount of "use" to maintain a trademark registration. Rather, the use need only be "bona fide," and "not made merely to reserve a right in the mark." 15 U.S.C. §1127. Thus, even a small number of sales are sufficient "use" to avoid abandonment so long as that use was bona fide. *Allard Enters. v.*

---

[2] BRP has argued that the Court should apply a preponderance of the evidence standard to its abandonment claim. While there is a circuit split regarding the standard of proof for an abandonment claim, the vast majority of circuits, including the Sixth Circuit, apply a clear and convincing evidence standard. *See* 3 McCarthy on Trademarks §17.12 (3d ed. 2018). Indeed, the Federal Circuit is the ***only*** Court to follow the preponderance of the evidence standard for abandonment claims. *Id.*



*Advanced Programming Res., Inc.*, 146 F.3d 350, 358 (6th Cir. 1998) ("As long as there is genuine use of the mark in commerce, however, ownership may be established even if the first uses are not extensive and do not result in deep market penetration or widespread recognition."); *Am. Ass'n for Justice v. Am. Trial Lawyers Ass'n,* 698 F. Supp. 2d 1129, 1138 (D. Minn. 2010) ("A single bona fide use of a mark is sufficient against a claim of abandonment.") (quotations omitted).

Even if a registrant has ceased use of its mark for three years, a finding of abandonment is not proper unless there is clear and convincing evidence that the registrant intends not to resume use of the mark. 15 U.S.C. §1127. In determining whether there is an intent not to resume use, it is proper to consider not only a registrant's actions during the three years of nonuse, but also activities before or after this period. *See Crash Dummy Move, LLC v. Mattel, Inc.*, 601 F.3d 1387, 1391-92 (Fed. Cir. 2010) (considering evidence from after the three-year nonuse period to establish an intent to resume use); *see also* 3 McCarthy on Trademarks §17.21.

Where goods are particularly durable, as is the case with automobiles, there is persisting goodwill (*i.e.*, "residual goodwill") that may prevent a finding of abandonment. As McCarthy explains, "[f]amous automobile marks of models no longer in production retain their recognition and good will as a result of continuing public use of such long-lasting products." 3 McCarthy on Trademarks §17.15. For example, in *Ferrari S.p.A. Escercizio Fabbriche Automobilie Corse v. McBurnie,* No. 86-1812, 1986 U.S. Dist. LEXIS 13442, *28 -31 (S.D. Cal. June 4, 1989) the court found the fact that Ferrari ceased manufacturing its vehicle with no plans to



12

resume use did not result in abandonment thirteen years later because of continuing good will along with parts support. *See also Emergency One, Inc. v. Am. FireEagle, Ltd.*, 228 F.3d 531, 537 (4th Cir. 2000) ("[b]ecause fire trucks have very long lives (often twenty to thirty years), the mark stays visible, and the good will value of the mark persists long after production of trucks has ceased" and, consequently it might be reasonable for an automotive manufacturer to spend a long period of time contemplating reintroduction of the brand); *Am. Motors Corp. v Action-Age*, 178 U.S.P.Q. 377, 378 (TTAB 1973) (finding "a considerable reservoir of goodwill" in American Motors' RAMBLER mark that inured to American Motors due to, *inter alia*, "the large number of 'RAMBLER' vehicles still on the road" and American Motors' "activities in supplying 'RAMBLER' parts and accessories to owners of these vehicles").

Finally, it should be emphasized that BRP bears the ultimate burden of proving abandonment by clear and convincing evidence. Even if BRP is able to establish non-use for three consecutive years, only the burden of production shifts to JLR—the **burden of persuasion remains with BRP**. *FDIC v. Homestead Mortgage Co.*, 2010 U.S. Dist. LEXIS 136392, *32 (6th Cir. 2010). Indeed, McCarthy explains "every federal court that has considered the issue has concluded that a prima facie case of abandonment only shifts the burden of production and the ultimate burden of persuasion always remains with the party claiming that the mark has been abandoned." 3 McCarthy on Trademarks §17.21 (quotations omitted). Thus, if JLR presents any evidence of an intent to resume



13

use, BRP retains the burden to prove by clear and convincing evidence that JLR intended not to resume use of the DEFENDER trademark.

### 2.   Key facts

BRP cannot show, by clear and convincing evidence, either prong of abandonment.  Regarding JLR's alleged nonuse, JLR and its licensees in fact have used the DEFENDER trademark in commerce, in connection with automobiles, continuously since at least 1992.  This activity includes without limitation:

- New vehicle sales to consumers from 1992 to 1998
- Pre-owned vehicle sales from the 1990s to date
- Sales of parts and accessories in connection with Land Rover DEFENDER vehicles
- Repair and service of DEFENDER vehicles
- Sales of toys and other merchandise
- Continued marketing of Land Rover DEFENDER in connection with its general business and in connection with popular media such as movies
- New vehicle sales to Busch Gardens in the early 2000s
- New vehicle sales to the U.S. military, through its licensee Rovers North, from 2009-2016

Further, JLR has always intended to resume large scale sale of DEFENDER vehicles to U.S. consumers.  This evidence includes without limitation:

- Express public statements of intent to bring back mass production of the DEFENDER



- A worldwide focus on the brand

- Product planning documentation

- Widespread demand from its customers for the vehicles

Finally, there is extensive evidence that JLR retains residual goodwill that negates any claim of trademark abandonment, including without limitation:

- Sustained high demand and resale values for pre-owned DEFENDER vehicles

- Consistent third-party media coverage describing the DEFENDER as iconic and noting sustained consumer enthusiasm

- BRP's attempt to co-opt the DEFENDER brand and imagery

## E. Fraud

### 1. Legal standards and issues

BRP claims that JLR renewed its DEFENDER trademark registration through fraud on the PTO. "[A] trademark is obtained fraudulently under the Lanham Act only if the applicant or registrant knowingly makes a false, material representation with the intent to deceive the PTO." *In re Bose*, 580 F. 3d 1240, 1245 (Fed. Cir. 2009). Information is only considered "material" if it caused JLR to obtain a renewal of its registration to which it was not entitled. *See* 6 McCarthy on Trademarks §31.67 ("A misrepresentation can be 'material' so as to constitute fraud only if the registration of the mark would not have been granted in the form it was if the true facts had been known to the USPTO examining attorney."); *see also Morehouse Mfg. Corp. v. J. Strickland & Co.*, 407 F.2d 881, 886 (CCPA 1969).



A party claiming fraud bears a heavy burden; it must be proven by clear and convincing evidence. *Id.* at 1243. Indeed, "the very nature of the charge of fraud requires that it be proven to the hilt with clear and convincing evidence. There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party." *Id.* (citations and quotations omitted). Further, while circumstantial evidence can be used to show fraud, that evidence must be considered in light of the high burden of proof, and "inferences drawn from lesser evidence cannot satisfy the deceptive intent requirement." *Id.* at 1245 (citing *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1257, 1366 (Fed. Cir. 2008)). Moreover, "[t]here is no fraud if a false misrepresentation is occasioned by an honest misunderstanding or inadvertence without a willful intent to deceive. *Id.* at 1246.

BRP contends that JLR committed fraud because its specimens were improper and/or did not prove use. BRP ignores, however, that "[t]he law is settled that the insufficiency of the specimens, per se, does not constitute grounds for cancelling a registration." *Marshall Field & Co. v. Mrs. Fields Cookies*, 1989 TTAB LEXIS 17, *10-11 (TTAB March 7, 1989). The reason is that the purpose of specimens is not to show *that* a mark is being used in commerce, but rather to show *how* the mark is being used. *Id.* at *11-12 (purpose of a specimen is to confirm that the mark is being used as a trademark or service mark, not whether it is in use). Indeed, in *Marshall Field & Co.*, the TTAB explained that it would be inherently unfair to cancel a registrant's mark based on an alleged deficiency in the specimen that was never raised by the PTO examiner, because if it had been raised



16

the registrant would have been permitted to cure any deficiency by submitting a substitute specimen:

> Moreover, fairness dictates that the ex parte question of the sufficiency of the specimens not be the basis for sustaining a petition for cancellation. If the Examining Attorney had objected to the specimens during the examination of the application, the applicant would have had an opportunity to submit acceptable substitute specimens. Assuming, arguendo, that registrant's specimens are unacceptable, it would be unfair to penalize registrant for not submitting substitute specimens when that requirement was never made by the Examining Attorney.

*Id.* at *12 (citing *Century 21 Real Estate Corp. v. Century Life of Am.*, 10 U.S.P.Q.2d 2034, 2035 (TTAB 1986)).

### 2.    Key facts

BRP cannot prevail on its fraud defense because it is premised on a legal standard that does not exist. Specifically, BRP's fraud claim assumes that JLR's specimens needed to prove use in commerce and that JLR therefore needed to know the VIN number and sale date of the specimens shown. That is not the law. Rather, a specimen only needs to show *how* a mark is used in commerce. The declaration that accompanies a renewal filing provides the evidentiary support for the fact that JLR and/or its licensees were selling DEFENDER vehicles and related goods.

BRP cannot show that JLR committed fraud because JLR and/or its licensee were, in fact, selling new or pre-owned vehicles at the time of each renewal (i.e., 2000, 2003, 2014). That is, the evidence will show that JLR and/or its licensees have sold pre-owned vehicles in the U.S. continuously from at least 1993 to the



present. Additionally, in 2000 JLR was still servicing new vehicles previously sold to consumers that were still under the warranty. In 2003, JLR had just sold a fleet of new vehicles to Busch Gardens. And in 2014, JLR was selling new vehicles to its licensee Rovers North that in turn sold them to the U.S. military and defense contractors.  Even if JLR had been incorrect in its understanding of the purpose of the specimen, BRP cannot show that JLR intended to deceive nor that these representations were material.  JLR could have merely submitted a new specimen if the law were as BRP asserts it.

## F.    Unclean hands

On December 28, 2018, BRP proposed for the first time a jury instruction for "unclean hands," and that an unclean hands question be included on the verdict form.  JLR objects because the assertion of the defense is untimely, not within the purview of the jury, and fails as a matter of law.

First, BRP did not raise this defense in the Pretrial Order, and has not raised any good cause for adding the defense to the case.  Per Local Rule 16.2, a signed Joint Final Pretrial Order "becomes an order of the Court, superseding the pleadings and governing the course of trial unless modified by further order." Further, this Court's June 7, 2017 Scheduling Order states: "The proposed Final Pretrial Order shall strictly comply with the requirements of Local Rule 16.2." (Dkt. #33 at PgID 612 (emphasis in original).)  Therefore, BRP has waived any unclean hands defense. *Id*.; *see also Ordos City Hawtai Autobody Co. v. Dimond Rigging Co., LLC.*, No. 13-14909, 2015 U.S. Dist. LEXIS 190261, *3 (E.D. Mich.



18

2015) (Cox, J.) ("Defenses not included in the Final Pretrial order are generally waived.")

Second, unclean hands is an equitable defense that would be decided by the court, not the jury. *McLemore v. Regions Bank*, 682 F.3d 414, 421-422 (6th Cir. 2012) (unclean hands is an equitable defense); *Whirlpool Properties, Inc. v. LG Electronics U.S.A., Inc.*, Case No. 1:03-414, 2005 WL 3088339, *28 (W.D. Mich. Nov. 17, 2005) (unclean hands is an equitable defense to be tried by the court). Therefore, there is no reason to include jury instruction or insert it in the verdict form.

Finally, an unclean hands assertion "requires that the alleged misconduct on the part of the plaintiff <u>relate directly to the transaction about which the plaintiff has made a complaint</u>." *Performance Unlimited v. Questar Publishers*, 52 F.3d 1373, 1383 (6th Cir. 1995) (emphasis added). BRP has not alleged any misconduct by JLR that meets this requirement.



Respectfully submitted,

**BROOKS KUSHMAN P.C.**

Dated:   December 28, 2018

 /s/ Frank A. Angileri
Frank A. Angileri (P45611)
Chanille Carswell (P53754)
Rebecca J. Cantor (P76826)
Alan J. Gocha (P80972)
1000 Town Center, Twenty-Second Floor
Southfield, Michigan 48075
Tel:  (248) 358-4400 / Fax:  (248) 358-3351
Email:  fangileri@brookskushman.com
              ccarwell@brookskushman.com
              agocha@brookskushman.com
              rcantor@brookskushman.com

*Attorneys for Plaintiff*
*Jaguar Land Rover Limited*

